IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA CANTU, BEV JOHNSON AND JOSE TREVINO, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 1:17-cv-00012 |
| VOLKSWAGEN GROUP OF AMERICA, INC., AUDI OF AMERICA, LLC AND PAYNE IMPORTS, LLP d/b/a PAYNE MISSION MITSUBISHI-VOLKSWAGEN-SUZUKI, | § § § § § § | |
| Defendants. | § § | |

## VOLKSWAGEN GROUP OF AMERICA, INC.'S AND AUDI OF AMERICA, LLC'S NOTICE OF REMOVAL

This Court has subject matter jurisdiction—and this matter is therefore removable—because Plaintiffs raise claims and a right to relief that depend upon the resolution of numerous disputed and substantial questions of federal law, including questions under the federal Clean Air Act ("CAA") and associated regulations issued by the federal Environmental Protection Agency ("EPA"). *See* 28 U.S.C. §§ 1331, 1441(a); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005).

Although the Plaintiffs nominally seek to recover for alleged state law claims, those claims are entirely dependent on allegations that Defendant violated federal law. Indisputably, those causes of action are based on the allegation that Defendant sold vehicles which did not comply with applicable, i.e., federal, EPA issued, emission standards because they were equipped with software programs that are illegal "defeat devices" and render

invalid the vehicles' certificates of conformity with emissions regulations issued by the EPA. Indeed, the Petition repeatedly uses the term "defeat devices" and continually refers to "emission standards." Both terms are incorporated and defined by federal regulations. Thus, the Plaintiffs' claims for relief will require resolution of substantial questions of federal law—including, *inter alia,* whether and/or the extent to which Defendant's alleged conduct violates the CAA, EPA regulations, and/or federal emission standards, and the appropriate remedy for the alleged violations. The Court will also have to determine whether permitting the Plaintiffs to pursue their claims in state court will interfere with Congress' expressed intent that regulation of motor vehicle emissions is "a principally federal project." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996).

The fact that Plaintiffs are only pursuing state causes of action does not preclude removal. As the Supreme Court long ago recognized, federal question jurisdiction is not dependent on the assertion or availability of a federal cause of action, but exists whenever "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S.1, 28 (1983). That is the case here.

Defendants Volkswagen Group of America, Inc. and Audi of America, LLC (collectively "VWGoA") thus hereby remove this action from the 138th District Court of Cameron County, Texas to the United States District Court for the Southern District of Texas, Brownsville Division, 28 U.S.C. §§ 1331, 1441(a) and 1446, based on the following facts:

I.    **Background.**

1.    Plaintiffs Joshua Cantu, Bev Johnson and Jose Trevino ("Plaintiffs") commenced an action in the 138th District Court of Cameron County, Texas, Cause No. 2016-DCL-07295.

2.    The United States District Court for the Southern District of Texas, Brownsville Division, is the United States District, and Division, embracing the 138th District Court of Cameron County, Texas where this action is pending. *See* 28 U.S.C. §§ 124(d)(1) and 1446(a). Therefore, venue of this removed action is proper in this Court.

3.    Initial Removal was preserved by having it filed within thirty days of service of Plaintiffs' Petition on VWGoA, in compliance with 28 U.S.C. § 1446(b). There has been no waiver of VWGoA's right to removal, and VWGoA has taken no actions in the state court inconsistent with this removal.

4.    This Notice of Removal is accompanied by the state court documents filed in the trial court related to this case, including the trial court docket sheet, which is attached as **Exhibit "A."** Other than the documents attached at Exhibit A, no pleadings, process, orders or other documents in the case have been served or otherwise received by VWGoA or, to VWGoA's knowledge, are presently on file in the state court. In the event that such filings come to VWGoA's attention, true and legible copies will immediately be filed with this Court.

5.    VWGoA is serving written notification on Plaintiffs' counsel and filing a Notice of Filing Notice of Removal, attaching a copy of this Notice of Removal, with the Clerk for the 138th District Court of Cameron County, Texas.

6.    Defendant Payne Imports, LLP d/b/a Payne Mission Mitsubishi-Volkswagen-Suzuki consents to this removal and is filing notification of same.

**II.    Basis for Removal.**

7.    This action is based upon allegations concerning the widely-publicized EPA Notices of Violation dated September 18, 2015, and November 2, 2015, that addressed the alleged installation of emissions testing "defeat devices" in certain of Defendant's diesel vehicles.

8.    There are over 1,300 actions pending in federal courts in the United States against Defendants based on similar allegations regarding the use of undisclosed software in the emissions control systems of Defendants' vehicles, which circumvented or defeated the purpose of the emissions tests established by the EPA (this software and its calibrations are called in the pleadings "defeat devices").

9.    On December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring the hundreds of pending actions raising common issues of fact and law to the U.S. District Court for the Northern District of California (Breyer, J.) for coordinated and/or consolidated pre-trial proceedings.  In its order, the JPML noted that "the actions in this litigation involve common questions of fact, and . . . centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."   Subsequently-filed actions, including an action filed by the United States at the request of the EPA Administrator, and an action by the Federal Trade Commission ("FTC") have been filed in or transferred to the

MDL.  An MDL proceeding conserves the resources of the litigants and promotes judicial economy relating to these issues.[1]

10.    Plaintiffs' claims are properly removable to this Court and should be adjudicated in the MDL established in the Northern District of California, which involves hundreds of actions asserting claims that arise from the same factual allegations as this one and that raise the same questions of law concerning defeat devices, the validity of certificates of conformity, and emissions regulations. Upon removal this case will be immediately tagged for transfer to the MDL.

11.    Although the Plaintiffs bring claims under state law, their resolution hinges on addressing a series of disputed federal questions that are substantial and will have national repercussions.

12.    At bottom, Plaintiffs' claims depend on allegations that Defendants installed software programs that are illegal defeat devices under the CAA.  Plaintiffs contend that the software programs caused the vehicles to dramatically exceed the federal emission standards and rendered fraudulent representations about the vehicles' fuel economy and greenhouse gas emissions.  *See, e.g.*, Pet. ¶¶ 14-15.

---

[1] As reflected in the Consumer Class Action Settlement Agreement and Release (relevant portions of which are attached as **Exhibit B**), the DOJ (on behalf of the EPA), the California Air Resources Board (on behalf of the state of California), the California Attorney General, private plaintiffs representing a nationwide class of consumers, and Defendant, with the assistance of the Court-Appointed Settlement Master, former FBI Director Robert Mueller, have reached a settlement as to class vehicles with 2.0 liter engines that will resolve the pending disputes by offering a potential modification of those vehicles to allow compliance with emissions standards, remediating environmental concerns, and providing substantial compensation to individual owners and lessees.  Such a resolution of large classes of claims embodies precisely the uniform resolution Congress sought to ensure when enacting Title II.  Judge Breyer approved the settlement on October 25, 2016.  *See* Order Granting Final Approval of the 2.0-Liter TDI Consumer and Reseller Dealership Class Action Settlement (relevant portions of which are attached as **Exhibit C**).

13.     The Petition relies on assumptions and accusations implicating substantial questions of federal law:

(a)     Plaintiffs allege violations of federal law.  (*See e.g.,* ¶ 14);

(b)     Plaintiffs' Petition makes assumptions based on the Clean Air Act and EPA Notice about the presence, effect, legality, definition, and effect of a "defeat device" (¶¶ 14, 27, 36);

(c)     Plaintiffs assert, "[T]he cars were . . . equipped with emission control devices ("defeat devices") that were intended to evade state and federal standards and to manipulate data related to performance and emissions." (¶ 14).

(d)     Plaintiffs assert Volkswagen fraudulently failed to disclose the Affected Vehicles emit 40 times the allowed emissions levels.  (¶ 15, 21, 30, 39).

(e)     Plaintiffs make claims for damages pursuant to the Texas Deceptive Trade Practices Act (¶¶ 19, 28, 37), negligent misrepresentation (¶¶ 20, 29, 38), fraud (¶¶ 21-23, 30-32, 39-41), conspiracy to commit fraud (¶¶ 24, 33, 42); and unjust enrichment (¶¶ 25, 34, 43).

14.     In "contrast to federally encouraged state control over stationary sources [of environmental pollution], regulation of motor vehicle emissions ha[s] been a principally federal project." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) ("On the other hand, the federal government sets nationwide

emissions standards for mobile sources"); *Engine Mfrs.*, 88 F.3d at 1079 ("The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states.").  Without national control, the transitory nature of cars could create regulatory "nightmares" for manufacturers, who would otherwise face fifty different standards in fifty different states—not to mention additional standards from other localities.  *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979).  To this end, the CAA bars states from adopting or attempting to enforce any standard relating to the control of emissions from new motor vehicles. 42 U.S.C. § 7543(a).[2]

15.     The claims asserted by Plaintiffs are grounded on the allegation that they are entitled to relief as a result of the fact that Defendant designed, manufactured or distributed vehicles which do not comply with the applicable emission standards because they are equipped with a defeat device.  *See*, *e.g.*, Pet. ¶¶ 14-15.  Resolution of these causes of action then requires resolution of disputed questions of *federal* law, including, but not limited to, whether this action constitutes an attempt to enforce a "standard relating to the control of emissions from new motor vehicles" and therefore runs afoul of the limitation set forth in the CAA.   42 U.S.C. §7543(a); and whether and/or the extent to which Defendant's alleged conduct violates the CAA, EPA regulations, and/or federal emission standards, and the appropriate remedy for the alleged violations.  Precisely the issues currently pending in the

---

[2] The sole exception to total federal control under the CAA are provisions that permit California to adopt its own standards and enforcement procedures if the EPA "determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."  *Id*. § 7543(b)(1).  A 1977 amendment to the CAA allows other States to choose to adopt and enforce standards identical to EPA-approved California standards.  42 U.S.C. § 7507.  It is undisputed here, however, that Texas has never sought to enforce the California standards and that the applicable emissions regulations are exclusively federal.

MDL.  This court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and §1441(a).

**PLAINTIFFS' CLAIMS TURN ON SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW THAT HAVE NATIONAL CONSEQUENCE**.

16.    Although Plaintiffs dress their claims for relief in the garb of state law, courts regularly look past the nominal cause of action to the litigation realities when deciding whether federal question jurisdiction exists.  *See, e.g.*, *Franchise Tax Bd. of Cal.,* 463 U.S. at 28 (federal question jurisdiction exists over state law claims which depend on answer to substantial federal question); 13D Wright *et al.*, *supra*, § 3562 ("Throughout these cases, one important factor has been the [Supreme] Court's willingness - on occasion - to look beyond the law that created the claim being asserted to view the litigation reality in assessing whether there is a need for federal question jurisdiction.").

17.    In particular, the Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable, & Sons Metal Prods.*, *Inc.,* 545 U.S. 308, 312 (2005); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997).  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

18.     Here Plaintiffs' Petition demonstrates on its face that the right to relief under its purported state law claims requires resolution of several disputed and substantial federal questions which give rise to federal question jurisdiction.

19.     In particular, the Petition is premised on and arises out of the September 18, 2015 and November 2, 2015 Notices of Violation issued by the EPA.  The core of the Petition is that Defendant installed in certain vehicles "emission control devices ("defeat devices") that were intended to evade state and federal standards and to manipulate data related to performance and emissions."  *Id.* ¶ 14.

20.     This theory undergirds the Plaintiffs' claims and presents a series of disputed questions under *federal* law.  For example, the claims require a finding as to whether the vehicles dramatically exceeded the federal emissions standards; a determination whether Defendant's use of the software program resulted in misrepresentations regarding greenhouse gas emissions and fuel economy; a determination of the appropriate remedy for these alleged violations of the CAA; and whether 42 U.S.C. § 7543(a) bars Plaintiffs from pursuing state law claims premised on a failure to comply with CAA emission standards.

21.     Federal law is thus "an 'essential element'" of Plaintiffs' claims.  *See Burr v. Volkswagen Group of America, Inc.,* Case No. C16-0073-JCC (W.D. Wa. March 8, 2016) (denying plaintiff's motion for remand on grounds that state law claims for breach of contract, violation of Washington's Consumer Protection Act, fraud and intentional misrepresentation "rest squarely on his allegation that Volkswagen violated these laws and regulations [federal statutes cited by EPA in its NOV]").

22.     Plaintiffs' claims for relief require resolution of a substantial question of federal law—including, *inter alia,* whether and/or the extent to which VWGoA's alleged conduct violates federal emission standards, and the appropriate remedy for the alleged violations.  (*See e.g.,* ¶¶ 14, 17-18).  Plaintiffs cannot "defeat removal by omitting to plead necessary federal questions in [their] complaint."  *Hughes v. Chevron Phillips Chem. Co. LP*, 478 Fed. Appx. 167, 171 (5th Cir. 2012) (quoting *Franchise Tax,* 463 U.S. at 22).  Similarly, Plaintiffs are not permitted to "avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of [their] claim."  *McDaniel v. State,* 2006 U.S. Dist. LEXIS 59092, *6 (D. Mont. 2006) (citing *Lippitt v. Raymond James Fin. Servs.,* 340 F.3d 1033, 1041 (9th Cir. 2003); *see also Rollins Environmental Services (FS), Inc. v. Parish of St. James*, 775 F.2d 627, 631 (5th Cir. 1985) (removal was proper when plaintiff's claim involved substantial federal issues); *Chance v. Sullivan*, 993 F. Supp. 565, 567 (S.D. Tex. 1998) (Plaintiff's state claims for breach of fiduciary duty, common law fraud and fraud in the inducement, conversion, legal malpractice, and violations of the Texas Deceptive Trade Practices Act were "inescapably infused with . . . overriding federal concerns" and properly removable under federal question jurisdiction); *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (removal was proper when resolution of state law claims depended on a judicially-created federal doctrine that applied to FCC telecommunications carriers); *League to Save Lake Tahoe v. BJK Corp.,* 547 F.2d 1072, 1074 (9th Cir. 1976); *West Virginia v. Eli Lilly & Co.,* 476 F. Supp.2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Brothers, Inc. v. City of Lodi,* 333 F.

Supp.2d 895, 906 (E.D. Cal. 2004) (state law claims for breach of contract, negligent misrepresentation, and fraud were removable as they implicated CERCLA); *Menoken v. McNamara,* 213 F.R.D. 193, 197 (D.N.J, 2003) (federal question jurisdiction existed when plaintiff's state law fraudulent concealment claim required proof of an underlying violation of the FMLA or ADA); *Schulze v. Legg Mason Wood Walker, Inc.,* 865 F. Supp. 277 (W.D. Pa. 1994) (removal was proper when resolution of state law claim was dependent upon interpretation of federal statute); *cf.* 42 USCS § 7604 ("The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty . . . .").

23.    Indeed, courts have repeatedly found the exercise of federal question jurisdiction to be appropriate where, as here, liability is dependent on the application or meaning of a federal statute or regulation.  S*ee e.g., Hill v. BellSouth Telecommunications, Inc.,* 364 F.3d 1308, 1317 (11th Cir. 2004) (removal was proper when resolution of state law claims depended on a judicially-created federal doctrine that applied to FCC telecommunications carriers); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (exercise of federal jurisdiction proper where plaintiff's state law claim for breach of contract was dependent on meaning of the term "owner" under the Clean Air Act, and where the resolution of a federal issue in state law causes of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory scheme necessary to uniformity); *see also Rollins Environmental Services (FS), Inc. v. Parish of St. James*, 775 F.2d 627, 631 (5th Cir. 1985) (removal was proper when plaintiff's

claim involved substantial federal issues); *League to Save Lake Tahoe v. BJK Corp.,* 547 F.2d 1072, 1074 (9th Cir. 1976) (same); *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 985–86 (M.D. Tenn. 2014) (state court action alleging state law causes of action properly removed because the complaint invoked the federal Medical Device Act); *Arrington v. Medtronic, Inc.*, No. 2:14-CV-02473-JTF, 2014 WL 10384579, at *9 (W.D. Tenn. Sept. 2, 2014) (substantial federal question exists where "Plaintiffs cannot prevail on their claims, unless they prove that Defendants violated federal requirements"); *West Virginia v. Eli Lilly & Co.,* 476 F. Supp.2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Brothers, Inc. v. City of Lodi,* 333 F. Supp.2d 895, 906 (E.D. Cal. 2004) (state law claims for breach of contract, negligent misrepresentation, and fraud were removable as they implicated CERCLA); *Menoken v. McNamara,* 213 F.R.D. 193, 197 (D.N.J. 2003) (federal question jurisdiction existed when plaintiff's state law fraudulent concealment claim required proof of an underlying violation of 1994) (removal was proper when resolution of state law claim was dependent upon interpretation of federal statute).

24.    There is a substantial federal interest in resolving the important issues surrounding allegations of using defeat devices, rendering invalid certificates of conformity, and violating federal emissions standards.  Defendants sell vehicles throughout the United States.  The need for uniformity in addressing these questions is acute, as evidenced by the fact that the controversy over allegations relating to Defendant's potential use of defeat devices has resulted in consolidation of over 1300 lawsuits in the Northern District of California.  Under the *Grable* standard, this case gives rise to federal question jurisdiction

and is removable to federal court.  "Where the resolution of a federal issue in a state law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts."  *Ormet Corp.*, 98 F.3d at 807.

25.    Finally, this Court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to the extent this Court determines there are any state claims due to the presence of independent Federal subject matter jurisdiction.

WHEREFORE, because the United States District Court for the Southern District of Texas has original federal question jurisdiction of this matter, Volkswagen Group of America, Inc. and Audi of America, LLC respectfully request that this Court assume full jurisdiction over the cause herein as provided by law.

Respectfully submitted,

*/s/ C. Vernon Hartline, Jr.*
**C. VERNON HARTLINE, JR.**
State Bar No. 09159500
hartline@flash.net

**HARTLINE DACUS BARGER DREYER LLP**
8750 N. Central Expressway, Suite 1600
Dallas, Texas  75231
214-369-2100
214-369-2118 fax

And

**DARRELL L. BARGER**
State Bar No. 01733800
dbarger@hdbdlaw.com

**HARTLINE DACUS BARGER DREYER LLP**
1980 Post Oak Boulevard, Suite 1800
Houston, Texas 77056
713-759-1990
713-652-2419 fax

And

**RICHARD W. CREWS, JR.**
State Bar No. 05075500
rcrews@hdbdlaw.com

**HARTLINE DACUS BARGER DREYER LLP**
800 North Shoreline Blvd, Suite 2000, North Tower
Corpus Christi, TX 78401
361-866-8000
361-866-8039 fax

And

**JEFFREY L. CHASE**
NY State Bar No. 1002203
jchase@herzfeld-rubin.com
**MICHAEL B. GALLUB**
NY State Bar No. 2141851
mgallub@herzfeld-rubin.com

**HERZFELD & RUBIN, P.C.**
125 Broad Street
New York, New York 10004
212-471-8459
212-344-3333 fax

And

**WILLIAM B. MONAHAN**
New York State Bar 4229027
monahanw@sullcrom.com

**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
212-558-4000
Fax: 212-558-3588

**ATTORNEYS FOR DEFENDANT
VOLKSWAGEN GROUP OF AMERICA,
INC. AND AUDI OF AMERICA, LLC**

## <u>CERTIFICATE OF SERVICE</u>

On January 26, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served Plaintiffs' counsel of record electronically directly to their e-mail address:

Bobby Garcia
State Bar No. 07645210
E-mail: jpena@bobbygarcia.com
LAW OFFICES OF BOBBY GARCIA
5301 S. McColl
Edinburg, Texas 78539
Tel: (956) 668-7400
Fax: (956) 668-7500

Rick A. Eckerson
State Bar No. 00793671
e-mail: rick@eckersonlaw.com
ECKERSON LAW FIRM, PLLC
11601 Spring Cypress Road, Suite B
Tomball, Texas 77377
Tel: (713) 568-9824 (Main)
Tel: (780)-577-1763 (Main-Alberta)
Fax: (713) 481-9824

*/s/ C. Vernon Hartline, Jr.*